UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CULLEN DUKE,

               Plaintiff,

    v.

AMAZON.COM SERVICES LLC,

               Defendant.

Case No. C26-0183-SKV

ORDER RE:  MOTION TO REMAND

INTRODUCTION

Plaintiff Cullen Duke, proceeding individually and on behalf of a proposed class, filed a Motion to Remand.  Dkt. 17.  Defendant Amazon.com Services LLC (Amazon) opposes the motion.  Dkt. 21.  The Court, having considered Plaintiff's motion and all documents filed in support and opposition, herein DENIES the motion to remand upon finding jurisdiction in this Court established under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

BACKGROUND

Plaintiff filed this putative class action lawsuit in King County Superior Court on December 12, 2025.  Dkt. 1-2.  Plaintiff alleges that, when third parties sell goods and services through Amazon's online marketplace, Amazon acts as a "marketplace facilitator" under

ORDER RE:  MOTION TO REMAND - 1

Tennessee law and is therefore "'responsible to calculate, collect, remit, and refund state sales tax on sales sold by third party sellers[.]'" *Id.*, ¶11 (quoting https://www.amazon.com/gp/help/customer/display.html?nodeId=202211260 (last visited May 18, 2026); citing TN Code §§ 67-6-102(56), 67-6-501(f)).  Plaintiff describes purchases he made from third-party sellers through Amazon's marketplace that were shipped to and received by Plaintiff at his residence, "which is located in an unincorporated area of Sullivan County, Tennessee[,]" and for which Amazon applied a sales tax rate of 9.5%, rather than the 9.25% tax rate applicable to his residence.  *See id.*, ¶¶14-22.  He seeks relief relating to Amazon's "practice of calculating and collecting excessive sales tax on purchases made by customers from third-party sellers through Amazon's online marketplace[,]" and on behalf of a class defined as follows:

> All Amazon customers who, on or after December 12, 2021, purchased goods or services from marketplace sellers through Amazon's marketplace for which Amazon collected sales tax at a rate higher than the rate applicable to the customer's shipping address as set forth in Tennessee's Sales Tax Jurisdictional and Tax Rate Database, and whose aggregate excess sales tax paid to Amazon does not exceed $2,500.

*Id.*, ¶¶1, 30 (citing https://tnmap.tn.gov/sst/sst.html) (last visited May 18, 2026).  He includes causes of action under the Washington Consumer Protection Act, RCW 19.86 *et seq.*, and for common law conversion and unjust enrichment/restitution, *id.*, ¶¶36-65, and seeks an unspecified amount of damages, including actual, treble, and exemplary damages, attorneys' fees and costs, and pre- and post-judgment interest, *id.*, ¶50 and at 18.

On January 16, 2026, Amazon removed the case to this Court, alleging jurisdiction under CAFA.  Dkt. 1.  In the notice of removal, Amazon stated that this action presents a putative class that exceeds 100 members, with diverse parties, and an amount in controversy that exceeds $5 million in total.  *See id*.  The notice describes the Complaint as focusing "on individuals who live

ORDER RE:  MOTION TO REMAND - 2

outside of or on the border of a city's limits" and estimates an amount in controversy exceeding $5 million where a proposed class of individuals who reside on a Tennessee city border and purchased goods or services in Amazon's store could encompass thousands of members, seeking up to $2,500 in excess sales tax, which could be trebled to $7,500 in damages per class member. *Id.*, ¶¶17-18 (citing Dkt. 1-2, ¶¶14-20).

Now, in seeking remand, Plaintiff denies a sufficient amount in controversy to allow for the Court's jurisdiction under CAFA. *See* Dkts. 17-18. Amazon opposes the motion, *see* Dkts. 21-23, Plaintiff submitted a reply, Dkt. 26, and both parties, at the behest of the Court, provided supplemental briefing and evidence, *see* Dkts. 27-33.

DISCUSSION

A.      Applicable Standards

CAFA vests federal district courts with original jurisdiction over class actions involving 100 or more class members, minimal diversity, and an amount in controversy that exceeds $5 million. 28 U.S.C. § 1332(d)(2)(A). There is no presumption against removal for cases removed under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.") (citations omitted).

A notice of removal filed pursuant to CAFA "'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart*, 574 U.S. at 89). However, in the face of a motion to remand, the removing party must demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is met in order to sustain the removal. *See Rodriguez v. AT&T Mobility Servs., LLC*,

ORDER RE:  MOTION TO REMAND - 3

728 F.3d 975, 981 (9th Cir. 2013).  This requires a showing that it is "'more likely than not'" the amount in controversy satisfies the jurisdictional minimum.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (citations omitted).  Both parties may submit evidence outside the complaint, including affidavits, declarations, and other summary-judgment-type evidence, and the Court decides, through the preponderance of the evidence standard, whether CAFA's amount-in-controversy standard is satisfied.  *Ibarra*, 775 F.3d at 1197 (citations omitted).

When a removing defendant "relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citing *Ibarra*, 775 F.3d. at 1199).  The assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199.  *See also id*. at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").  "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1198-99).

The burden of demonstrating the reasonableness of the assumptions "remain[s] at all times" with the defendant.  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020).  However, the defendant "need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Id*. (citations omitted).  *See also 54-40 Brewing Co. LLC v. Truck Ins. Exch.*, C21-5586-BHS, 2021 WL 6124788, at *2 (W.D. Wash. Dec. 28, 2021) ("Though the burden remains with the defendant, it is not a daunting one.  Under this standard, a removing defendant is not obligated to completely 'research, state, and prove the plaintiff's

ORDER RE:  MOTION TO REMAND - 4

claims for damages.'") (quoted source omitted).  The amount in controversy refers to the "amount at stake" in the litigation, which "does not mean likely or probable liability; rather, it refers to *possible* liability."  *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (cleaned up and quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); emphasis added in *Jauregui*).  *See also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.") (citation omitted).

In applying the preponderance of the evidence standard, the district court "should weigh the reasonableness of the removing party's assumptions, not supply further assumptions on its own."  *Harris*, 980 F.3d at 701.  There is, however, "an important distinction between a court offering entirely new or different assumptions itself versus modifying one or more assumptions in the removing party's analysis."  *Jauregui*, 28 F.4th at 996.  Accordingly, while the Court may reject an assumption that is "unreasonable on its face without comparison to a better alternative," where the reason for rejecting that assumption "is because a different, better assumption is identified[,]" the court "should consider the claim under the better assumption – not just zero-out the claim."  *Id.* (stating that remanding a case where it "would still be inappropriate even under the better assumption" would subvert the purpose of CAFA by resulting in the remand of cases with an amount in controversy exceeding $5 million).

B.      Jurisdiction Under CAFA

In seeking remand, Plaintiff disputes the assumption in the notice of removal that any class member sustained $2,500 in actual damages and up to $7,500 in trebled damages.  As set forth in the Complaint, the $2,500 limit included in the class definition reflects the fact that any person who has paid in excess of that amount would be entitled to a refund from the State of

Tennessee. *See* Dkt. 1-2, ¶27 (alleging class members are unable to seek the relief sought from any entity other than Amazon because, pursuant to Tennessee law, "a consumer may file a claim for unauthorized sales tax amounts directly with the Tennessee Department of Revenue only in very limited circumstances, and the amount sought must be greater than $2,500.") (citing TN Code § 67-6-501(f)).  Plaintiff asserts that, given the small excess tax amounts at issue in this case, it is implausible to assume any class member, let alone a significant number, would have $2,500 in damages.  *See, e.g.*, Dkt. 1-2, ¶¶17-20, 22 (describing purchases made by Plaintiff totaling $1,518.01 and Amazon's collection of a total of $3.80 in excess of his applicable tax rate).

Plaintiff also denies the reasonableness of Amazon's assumption as to an estimated "thousands" of class members.  He asserts that the class definition encompasses only persons who were charged a sales tax rate higher than that applicable to their shipping address, not all individuals who reside on a Tennessee city border.  *See* Dkt. 1-2, ¶30.  He notes that Tennessee has a 7% state sales tax rate, that state law limits the local sales tax rate to 2.75%, for a total maximum sales tax rate in any locality of 9.75%, and that fifty eight of the ninety five total Tennessee counties have a county tax rate of 2.75%.  *See* Dkt. 17 at 9 (citing Due Dates and Tax Rates, https://www.tn.gov/revenue/taxes/sales-and-use-tax/due-dates-and-tax-rates.html; Local Sales Tax Rates, https://www.tn.gov/revenue/taxes/sales-and-use-tax/local-sales-tax/local-sales-tax-rates-map.html) (last visited May 18, 2026).  He further identifies the number of cities within the remaining thirty seven counties that also have a 2.75% tax rate.  *See* Dkt. 18, ¶2.  Plaintiff argues it is not plausible that residents in those fifty eight counties, or residents in the cities with maximum tax rates that are located in the remaining thirty seven counties, would have been overcharged as alleged in the Complaint.

ORDER RE:  MOTION TO REMAND - 6

Amazon does not defend its reliance on the $2,500 limit or the "city border" assertions in the notice of removal.  Amazon rejects the suggestion that the Complaint limits the class based on county or city, or with regard to the nature of the tax collected (i.e, state, county, city), and observes that the Complaint defines the class as including "'[a]ll Amazon customers' who purchased goods and were allegedly overcharged sales tax." Dkt. 21 at 12 (quoting Dkt. 1-2, ¶30).  Amazon points to a total of $2,087,835,495.05 in sales tax it collected from Tennessee customers in the time period at issue in the Complaint, Dkt. 23, ¶¶2-6, and Plaintiff's allegations that tax overcharges occurred as a "common course", Dkt. 1-2, ¶¶33, 38-40, 46-48, 62.  It asserts that determining the precise proportion of the taxes that constitute overcharges would require a manual review of each transaction, and proposes the application of a 50% "violation rate" to the $2 billion in taxes to determine the amount in controversy.  *See, e.g.*, *Waldrop v. Basic Am., Inc.*, C25-0382, 2025 WL 3680319, at *4 (E.D. Wash. Dec. 18, 2025) (finding defendant's estimated 50% violation rate drawn from a reasonable interpretation of a complaint's allegations in a wage and hour case that defendant engaged in a "'common course' of violations"); *Washington v. Kerry Inc.*, C25-0965-TL, 2025 WL 3089015, at *8 (W.D. Wash. Nov. 5, 2025) (observing that "a 'common practice' of alleged violations has been found to be a 50% violation rate[]" by district courts in this circuit; finding a 57% violation rate in a wage and hour case appropriate based on the allegations and evidence).  Under that proposal, damages would far exceed CAFA's $5 million threshold.  *See* Dkt. 21 at 11 (asserting that Plaintiff alleges taxes overcharged by 2.7% and that applying a 50% violation rate would result in an excess of $28 million in overcharged taxes).  Amazon asserts that there would be more than $5 million in controversy if only 0.24% of its $2 billion in tax collections were overcharges, or, with the addition of the

ORDER RE:  MOTION TO REMAND - 7

trebled damages and attorneys' fees available under the CPA, only 0.06% of that $2 billion. *See id.* at 9-11.

Amazon also argues that there would be $5 million in controversy even with a limitation to the thirty seven counties identified by Plaintiff. *See id.* at 14-15. It points to census data as showing 47.04% of Tennessee's population live in those thirty seven counties, and the tax data relied on by Plaintiff as suggesting a rate of overcharge ranging from 0.25% to 0.75%. *See* Dkt. 22, ¶¶2-4; Dkt. 18, ¶2. Amazon estimates that it would have collected $982,117,816.86 in taxes from those thirty seven counties, that a median 0.50% overcharge or a 0.25% overcharge would account for $4,910,589.08 or $2,455,294.54 of those taxes, respectively, which could be trebled to $14,731,767.24 or $7,365,883.62, and further increased with an award of attorneys' fees and injunctive relief. Dkt. 21 at 14-15.

Plaintiff, in reply, first argues that the Court should decline to consider Amazon's new theory as to the amount in controversy because it was offered after the thirty-day removal period and for the first time in opposing the motion to remand. *See, e.g.*, *Rodriguez v. Circle K Stores Inc.*, C19-0469, 2019 WL 3026747, at *4 (C.D. Cal. July 11, 2019) (declining to consider argument that more than $5 million in damages were at issue with respect to plaintiff's overtime claim because it was not raised in the notice of removal). As Plaintiff observes, a notice of removal "'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period' set forth in 28 U.S.C. § 1446(b)." *Baum v. Platinum Nine Holdings, LLC*, C25-0671-TL, 2025 WL 3237500, at *2 (W.D. Wash. Nov. 20, 2025) (quoting *O'Halloran v. Univ. of Wa.*, 856 F.2d 1375, 1381 (9th Cir. 1988)). "However, a defendant may amend the Notice of Removal after the thirty day window has closed to correct a 'defective allegation of jurisdiction.'" *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1117

ORDER RE:  MOTION TO REMAND - 8

(9th Cir. 2000) (quoting 28 U.S.C. § 1653).  Further, courts have found that "[a]llowing defendants to expand their analysis as to why the amount in controversy has been met is fully consistent" with allowing the correction of factual deficiencies in a notice of removal "by providing supplemental argument and evidence in connection with an opposition to a motion to remand."  *Tripp v. Crossmark, Inc.,* C13-3480, 2013 WL 5496550, at *2 (N.D. Cal. Oct. 3, 2013) (cited cases omitted).

Amazon does not here modify the legal basis for removal:  jurisdiction under CAFA due to an amount in controversy exceeding $5 million.  *Contra Baum*, 2025 WL 3237500, at *2 (declining to consider assertion of jurisdiction under CAFA where notice of removal only asserted diversity jurisdiction).  The Court finds it appropriate to consider the expanded analysis as to the amount in controversy submitted in opposition to the motion to remand.  Having found as such, the Court proceeds to consider the parties' remaining arguments in relation to the scope of the proposed class and the amount in controversy.

1.      Scope of Proposed Class:

Amazon construes the Complaint as broadly defining a statewide class of any Tennessee resident that could potentially have been overcharged sales tax.  That interpretation fails to reasonably account for Plaintiff's allegations.  As reflected in the class definition, the alleged overcharges occurred where there was a discrepancy between the tax rate applicable to a customer's shipping address and the rate applied.  *See* Dkt. 1-2, ¶30 ("All Amazon customers who . . . purchased goods or services from marketplace sellers through Amazon's marketplace for which Amazon collected sales tax at a rate higher than the rate *applicable to the customer's shipping address . . .* ") (emphasis added).  *See also* Dkt. 1-2, ¶¶1, 14-24 (alleging collection of sales tax on multiple purchases at a rate higher than the rate applicable to Plaintiff's shipping

address).  There is no indication in the Complaint and no suggestion in the parties' briefing that Amazon collected sales tax beyond the maximum amount allowed under State law.  *See generally* Dkt. 1-2 & Dkt. 26 at 11.  Amazon therefore does not reasonably construe the proposed class as including Tennessee residents with a shipping address in a county or city with the maximum, 9.75% sales tax rate.

In the supplemental brief, Plaintiff suggests a far narrower scope of the proposed class, limited to only Tennessee residents who live in "unincorporated areas on the border of a city with a tax rate higher than the county in which it sits."  Dkt. 31 at 5 (emphasis removed).  The Complaint identifies Plaintiff as falling in that category, Dkt. 1-2, ¶¶3, 14, and Plaintiff deems it the "concern" or "focus" of the Complaint, *see* Dkt. 31 at 5-6.  However, this does not exclude the possibility that other potential class members were subjected to tax overcharges based on their shipping address.  Plaintiff, in fact, states in the motion to remand:  "While Plaintiff and some of the proposed class members may live on the borders of cities (and this may have been a reason why they were charged excessive taxes), that is neither a necessary nor a sufficient condition to make a person a member of the class."  Dkt. 17 at 9.[1]  He also asserts that it is "unlikely" Amazon collected excess sales tax from residents who live outside of or on the border of cities in the thirty seven counties that have the same sales tax rate as the county in which they sit.  *Id*.

---

[1] Plaintiff's discussion of the "city border" tax discrepancy was, in both the motion to remand and the reply, responsive to Amazon's construction of the Complaint in the notice of removal.  *See* Dkt. 17 at 8-9 & Dkt. 26 at 9-10.  *See also* Dkt. 1 at 3 ("Plaintiff's Complaint claims that the alleged overcharges occurred given his location on the border of a city.") (citing Dkt. 1-2, ¶14).  In both of those filings, Plaintiff raised arguments as to where a tax discrepancy was likely to occur, while asserting that "the class definition focuses on persons who were charged a sales tax rate higher than the rate applicable to their shipping address."  Dkt. 17 at 9; *accord* Dkt. 26 at 10 ("Amazon entirely disregards Plaintiff's theory of liability (as well as its own original jurisdictional allegations) which are premised on the fact that the overcollections result from a discrepancy between the rate applicable to a customer's shipping address and the rate actually charged.").

ORDER RE:  MOTION TO REMAND - 10

In other words, neither the Complaint, nor Plaintiff's arguments exclude the possibility of sales tax collected at a rate higher than the rate applicable to shipping addresses located in any county or city with a tax rate falling below 9.75%.  The amount in controversy is therefore not reasonably calculated with consideration of a class limited to only Tennessee residents living in unincorporated areas on the border of a city with a tax rate higher than the county in which it sits. *See Jauregui*, 28 F.4th at 994 (amount in controversy "does not mean likely or probable liability; rather, it refers to *possible* liability."); *see also Lewis v. Hartford Cas. Ins. Co.*, C15-5275-RBL, 2015 WL 4430971, at *2 (W.D. Wash. July 20, 2015) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe.") (quoted source omitted).

2.      Amount in Controversy:

Amazon's proposals for calculating the amount in controversy, *see supra* at 7-8, fail to reasonably account for the allegations in the Complaint by failing to exclude all counties *and* all cities with the maximum, 9.75% tax rate.  Plaintiff identified an alternative formula in his reply: "[amount of sales tax collected on third party purchases only] * [percentage of Tennessee residents who have a local sales tax rate that is different than the state maximum] * [reasonable violation rate] * [amount of overcharge]."  Dkt. 26 at 14-15.  The Court finds this formula to reasonably account for the allegations in the Complaint and provide an appropriate mechanism for calculating the amount in controversy.

An initial issue with the first variable – the amount of sales tax collected on third party purchases only – was resolved through supplemental briefing.  That is, Amazon clarified through a supplemental declaration from Damian Hunt, the Director of State & Local Tax at Amazon, that it "collected an aggregated total amount of $2,087,835,495.05 in Tennessee sales taxes (i.e.,

ORDER RE:  MOTION TO REMAND - 11

state, county, and city taxes) <u>for transactions between customers and third-party sellers on Amazon's platform</u>, and that that amount <u>does not</u> include any sales tax collections resulting from Amazon's direct sales to customers." Dkt. 30, ¶2 (emphasis in original).[2] As Plaintiff observes, neither the original declaration from Hunt, nor Amazon's opposition to the motion to remand limited the $2 billion figure to taxes on sales made through third-party marketplace sellers, *see* Dkts. 21 & 23, and no explanation for the clarification is provided in the supplemental brief or declaration from Hunt, *see* Dkts. 28 & 30. Nonetheless, Plaintiff makes clear that he does not challenge the supplemental declaration, *see* Dkt. 31 at 7, and the Court finds no basis for rejecting the clarification contained therein. The Court therefore calculates the amount in controversy with consideration of Amazon's collection of a total of $2,087,835,495.05 in taxes on sales by third party sellers. *See* Dkt. 30, ¶2.

As related to the second variable – the percentage of Tennessee residents who have a local sales tax rate that is different than the state maximum – the evidence before the Court shows that fifty eight of the ninety five total Tennessee counties have a county tax rate of 2.75%, leaving thirty seven counties with tax rates below the maximum sales tax rate and providing for the possibility of a tax overcharge under the class definition. *See* Dkt. 17 at 9 (citations omitted). As noted above, Amazon suggests the use of 47.04% of residents based on census data showing the percentage of Tennessee's population living in the thirty seven counties. *See* Dkt. 21 at 14. However, as Plaintiff observes, that percentage fails to account for individuals in the thirty eight

---

[2] In so doing, Amazon appears to acknowledge, as it did in the notice of removal, that the putative class is limited to individuals who purchased goods from third parties who sell goods or services on Amazon's marketplace. *See* Dkt. 1 at 6 ("Plaintiff's proposed class is comprised of those who purchased goods or services from third-party sellers through the Amazon.com store on or after December 12, 2021 . . . "); Dkt. 1-2, ¶1 ("This class action arises from Amazon's practice of calculating and collecting excessive sales tax on purchases made by customers from third-party sellers through Amazon's online marketplace."), ¶30 (defining class to include "'[a]ll Amazon customers who . . . purchased goods or services *from marketplace sellers* through Amazon's marketplace . . .") (emphasis added).

ORDER RE: MOTION TO REMAND - 12

counties who would not be subject to a tax overcharge due to their maximum local/city tax rate. As suggested by Plaintiff and accepted by Amazon in its supplemental brief, *see* Dkt. 28 at 7, the Court considers the percentage of Tennessee residents who have a local sales tax rate that is different than the state maximum reflected in evidence showing that thirty three of the 144 cities in the thirty seven counties have the maximum 2.75% tax rate, leaving some 36.26% of Tennessee residents as potential class members for the purposes of calculating the amount in controversy. *See* Dkt. 26 at 13 (providing the formula for this calculation as: $(1 - 33 / 144) * 0.4704 = 0.3626$) (citing Dkt. 18, ¶2)).[3]

As to the third and fourth variables, Plaintiff argues in favor of a 50% violation rate and a .25% sales tax overcharge. *See* Dkts. 26 & 31. Amazon argues in favor of a 100% violation rate and a .50% sales tax overcharge. *See* Dkt. 28.

Plaintiff has the better argument in relation to the violation rate. Amazon identifies no basis beyond Plaintiff's allegations of a "common course" of conduct, *see* Dkt. 1-2, ¶¶33, 38-40, 46-48, 62, and Plaintiff's presumption that Amazon uses a system to automatically calculate taxes, *see* Dkt. 26 at 10, to support a 100% violation rate. *See* Dkt. 28 at 7-8. *Contra Femmer v. Sephora USA, Inc.*, C20-0676-JMB, 2020 WL 5632443, at *3 (E.D. Mo. Sept. 21, 2020) (finding evidence submitted by defendant provided for a "reasonable extrapolation" of excess taxes "on every sale" and noting plaintiff's failure to submit any "competing proof."). Plaintiff refutes the applicability of a 100% violation rate by showing purchases he made from third party sellers on Amazon's marketplace during the proposed class period and for which he was charged the

---

[3] In the supplemental brief, Plaintiff asserts that the 36.26% figure merely represented the "very high upper bound on class size", and provides an analysis of data showing a much smaller percentage based on a class including only Tennessee residents living in unincorporated areas on the border of a city with a tax rate higher than the county in which it sits. Dkt. 31 at 8-9 (citing Dkt. 32, ¶¶13, 18 & Exs. 6-9). However, as discussed above, the Court declines to adopt this narrow construction of the proposed class in estimating the amount in controversy.

ORDER RE:  MOTION TO REMAND - 13

correct sales tax. *See* Dkt. 33, ¶¶2-5, Exs. 1-4; *see also* Dkt. 32, ¶¶2-8. Plaintiff's proposed 50% violation rate would, moreover, comport with both Amazon's argument in opposition to the motion to remand, *see* Dkt. 21 at 9-11, and with conclusions drawn by other courts in this district when considering allegations of a common course of conduct, *see, e.g.*, *Waldrop*, 2025 WL 3680319, at *4. *See also Dale v. Vulcan Metals Corp.*, C25-5803-TMC, 2026 WL 304527, at *3-4 (W.D. Wash. Feb. 5, 2026) ("words and phrases like 'common course,' 'often,' and 'numerous occasions'" did not reasonably imply defendant "*always* violated" wage and hour laws; finding defendant had "not shown any basis for an assumed violation rate of 100%, or anything close to it.") (citing *Ibarra*, 775 F.3d at 1198-99 (allegations of a "'pattern and practice' of doing something" and an "'institutionalized unwritten policy that mandates'" alleged violations did not mean those violations always occurred)); *Rodriguez*, 2019 WL 3026747, at *2 ("[C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.") (quoted and other cited sources omitted). The Court, for these reasons, applies a 50% violation rate in calculating the amount in controversy.[4]

Amazon, on the other hand, persuades with respect to the overcharge amount. Plaintiff argues that Amazon fails to meet its burden to show the applicability of a .50% overcharge rate. He notes that the only allegations and evidence before the Court relate to his own examples of

---

[4] In the request for supplemental briefing, the Court asked the parties to address, *inter alia*, the "applicability of a violation rate, if any, to the determination of the amount in controversy where only those residents with a local sales tax rate falling below the state maximum are considered and in light of any system automating the calculation of tax rates[.]" Dkt. 27 at 1. Amazon did not provide any information or evidence regarding any such system, and asserted that it "makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Campbell v. Honey Sci., LLC*, 797 F. Supp. 3d 1080, 1086 (N.D. Cal. 2025). In *Campbell*, the Court went on to state: "Instead, the question is merely whether the assumptions underlying the defendants' calculation of the amount in controversy are reasonably based in the allegations of the complaint." *Id*. at 1086-87. The Court notes that Amazon here pointed to the same "common course" of conduct allegations as supporting both a 50% and a 100% violation rate. *See* Dkt. 21 at 9-11; Dkt. 28 at 7.

ORDER RE:  MOTION TO REMAND - 14

.25% overcharges, *see* Dkt. 1-2, ¶¶14-22, and Amazon's failure to present any evidence that any Tennessee resident was overcharged by more than .25%. However, Plaintiff submitted evidence reflecting a potential overcharge amount in numerous localities ranging between .25% and .75%. *See* Dkt. 18, ¶2. Amazon observes, for example, that for the ninety two cities (in the thirty seven counties) with tax rates below 2.75%, the median difference between the local and state maximum tax rates is .50%. *See* Dkt. 29, ¶3 (citing Dkt. 18, ¶2 (showing that 69 of the 92 have a 2.25% city tax rate, 8 have a 2.00% rate, and 15 have a 2.50% rate)). *See also* Dkt. 18, ¶2 (also showing that 22 have of the 37 counties have a 2.25% county tax rate, 6 have a 2.00% rate, and 9 have a 2.50% rate). Because the amount in controversy refers to "*possible* liability[,]" *Jauregui,* 28 F.4th at 994, this evidence provides a reasonable basis for the use of a .50% overcharge rate.

Applying these findings, the potential overcharged taxes total $1,892,622.88 ($2,087,835,495.05 * 36.26% * 50% * .50%). However, as proposed by Amazon and not challenged by Plaintiff, *see* Dkts. 26 & 31, the estimated amount in controversy also properly includes the trebled damages and reasonable attorneys' fees available under the CPA. *See* RCW 19.86.090. *See also Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.") (citation omitted); *Copple v. Arthur J. Gallegher & Co.*, C22-0116-LK-SKV, 2022 WL 3357865, at *4-7 (W.D. Wash. Aug. 2, 2022) ("[W]here a plaintiff asserts a CPA claim and puts treble damages at issue, 'a reasonable estimate of those damages must be included in the amount in controversy calculus.'") (quoting *Lewis*, 2015 WL 4430971, at *2-3). Trebled, the potential overcharged tax amount totals $5,677,868.64, and therefore exceeds CAFA's $5 million jurisdictional minimum even without consideration of an attorneys' fee

ORDER RE: MOTION TO REMAND - 15

award.[5]  The Court is therefore satisfied that, with consideration of Plaintiff's allegations, facts and evidence presented by both parties, and assumptions it finds reasonable, it is more likely than not the amount in controversy in this case exceeds $5 million.

CONCLUSION

Amazon has shown, by a preponderance of the evidence, that the amount in controversy exceeds $5 million as required under CAFA.  Plaintiffs' Motion to Remand, Dkt. 17, is therefore DENIED.

Dated this 18th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

---

[5] The Court notes that Amazon proposes and Plaintiff does not advance any opposition to the use of a 25% attorneys' fee award in calculating the amount in controversy.  *See Dale*, 2026 WL 304527, at *4 ("Although the Ninth Circuit has declined to adopt a 25% per se rule on attorney's fees in class actions, courts in this district have assumed such an award is a reasonable estimate when plaintiffs do not provide an alternative."); *Femmer*, 2020 WL 5632443, at *4 (using a 25% attorneys' fees estimate in a class action alleging violation of a Missouri consumer protection law through the charging of excess taxes where the state law provided for an award of attorneys' fees reasonably expended and plaintiffs did not produce any evidence or otherwise show that the use of that percentage was not warranted).

ORDER RE:  MOTION TO REMAND - 16