UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CULLEN DUKE,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendant. | Case No. C26-0183-SKV<br><br>ORDER RE: MOTION TO DISMISS |

## INTRODUCTION

Defendant Amazon.com Services LLC (Amazon) filed a Motion to Dismiss the putative class action brought by Plaintiff Cullen Duke. Dkt. 37. Plaintiff opposes the motion. Dkt. 38. The Court, having considered all briefing submitted, *see* Dkts. 37-38, 40, 43-44, and oral argument, *see* Dkt. 42, herein GRANTS Amazon's Motion to Dismiss, Dkt. 37, and GRANTS Plaintiff leave to amend.

## BACKGROUND

As set forth in the Complaint, when third parties sell goods and services through Amazon's online marketplace, Amazon acts as a "marketplace facilitator" under Tennessee law and is therefore "responsible to calculate, collect, remit, and refund state sales tax on sales sold

by third party sellers[.]" Dkt. 1-2, ¶ 11 (quoting https://www.amazon.com/gp/help/customer/display.html?nodeId=202211260; citing T.C.A. §§ 67-6-102(56), 67-6-501(f)). In Tennessee, the applicable tax rate for sales made through a marketplace facilitator's marketplace is determined by where the purchaser receives the product. *See* T.C.A. §§ 67-6-901(d), 67-6-902(a)(2). Plaintiff identifies multiple purchases he made from third-party sellers and for which Amazon applied a sales tax rate of 9.5%, rather than the 9.25% tax rate applicable to his residence. *See* Dkt. 1-2, ¶¶ 14-20, 22. He alleges he notified Amazon it was incorrectly charging him excess sales tax and Amazon continued to calculate and collect sales tax at an incorrect rate and refused his request for a refund. *See id.*, ¶¶ 21-24.

Plaintiff seeks relief relating to Amazon's practice of calculating and collecting excessive sales tax and on behalf of a class defined as follows:

> All Amazon customers who, on or after December 12, 2021, purchased goods or services from marketplace sellers through Amazon's marketplace for which Amazon collected sales tax at a rate higher than the rate applicable to the customer's shipping address as set forth in Tennessee's Sales Tax Jurisdictional and Tax Rate Database, and whose aggregate excess sales tax paid to Amazon does not exceed $2,500.

*Id.*, ¶¶ 1, 30 (citing https://tnmap.tn.gov/sst/sst.html). Plaintiff alleges he and class members are unable to seek relief from any entity other than Amazon because, under Tennessee law, refunds are available from the Tennessee Department of Revenue only if the claim amount exceeds $2,500. *See id.*, ¶ 27 (citing T.C.A. § 67-1-1802(e)(2)); *see also id.*, ¶¶ 17-20, 22 (describing purchases made by Plaintiff totaling $1,518.01 and Amazon's collection of a total of $3.80 in excess of his applicable tax rate). He includes causes of action under the Washington Consumer Protection Act (WCPA), RCW 19.86 *et seq.*, and for common law conversion and unjust enrichment/restitution. *See id.*, ¶¶ 36-65.

DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While detailed factual allegations are not required, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court is not, however, required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In moving to dismiss, Amazon notes that, under Tennessee law, marketplace facilitators, like other retailers, are required to collect sales tax on behalf of the state on goods sold to Tennessee residents and to remit that tax to the state. *See*, *e.g.*, T.C.A. § 67-6-515(a). Amazon also notes that Tennessee law expressly bars class actions against marketplace facilitators for overcollection of sales tax. T.C.A. § 67-6-515(e) ("No class action lawsuit may be brought

against a marketplace facilitator in this state on behalf of purchasers relating to overcollection of sales or use taxes by the marketplace facilitator, regardless of whether that claim is characterized as a tax refund claim."). Amazon argues Plaintiff seeks to "recast a routine Tennessee tax dispute as a Washington consumer class action to circumvent" Tennessee law, and that his claims fail as a matter of law. Dkt. 37 at 6.[1] The Court now addresses those claims and the associated arguments in turn.

A. WCPA Claims

The WCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. It serves to "protect the public and foster fair and honest competition[,]" and "is to be 'liberally construed that its beneficial purposes may be served.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn. 2d 27, 37, 204 P.3d 885 (2009) (quoting RCW 19.86.920).

The elements of a WCPA claim include (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injures the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act or practice and the injury suffered. *Trujillo v. NW Trustee Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). "Failure to satisfy even one of the elements is fatal to a [WCPA] claim." *Sorrell v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

Plaintiff here alleges Amazon engaged in a common course of calculating and collecting excessive sales tax in a manner that was both unfair and deceptive, the practice occurred in trade or commerce within the meaning of the WCPA, and, as result, Plaintiff and class members were

[1] Amazon does not concede Washington law governs this dispute, but applies Washington law for the purposes of this motion and reserves the right to challenge choice of law if needed. *See* Dkt. 37 at 6.

injured. Dkt. 1-2, ¶¶ 38-41, 46-49. Amazon argues Plaintiff's WCPA claims fail because its collection of Tennessee sales tax is not trade or commerce under the WCPA, and any alleged miscalculation of sales tax is not an unfair or deceptive act or practice under the WCPA.

1. Trade or Commerce:

Amazon first argues its collection of sales tax on behalf of Tennessee is not "trade or commerce" under the WCPA. *See* Dkt. 37 at 9-10. The parties agree no Washington court has addressed whether the collection of sales tax is an act or practice "in the conduct of any trade or commerce" under the WCPA. RCW 19.86.020. The parties also, at oral argument, affirmed their interest in the Court's resolution of this dispute, rather than certification of a question to the Washington Supreme Court. Plaintiff stressed that the request for certification was made only in the alternative, and clarified he was not aware of any other state sales tax statutory scheme that would give rise to a similar claim. Given the absence of any indication this issue could recur, the Court declines to exercise its discretion to certify under RCW 2.60.020 and instead considers the arguments raised. *See generally Goodman v. Dohmen*, 964 F.3d 798, 803 (9th Cir. 2019) (certifying issue that was "likely to recur"), *certified question answered*, 234 A.3d 1161 (Del. 2020); *Micomonaco v. State of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995) (decision to certify "rests in the sound discretion of the federal court.") (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

The WCPA broadly defines "'trade' and 'commerce'" as including "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." *Hangman Ridge*, 105 Wn.2d at 785 (quoting RCW § 19.86.010(2)). The WCPA, "on its face, shows a carefully drafted attempt to bring within its reaches *every* person who

conducts unfair or deceptive acts or practices in *any* trade or commerce." *Id*. (quoting *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984)).

There is no dispute that the sales of products discussed in the Complaint occurred in trade or commerce. The question before the Court is whether the alleged excessive tax collection occurring in conjunction with those sales was an act or practice "in the conduct of . . . trade or commerce" under the WCPA. RCW 19.86.020. Amazon offers definitions of "sales" and "commerce", *see* Dkt. 40 at 7-8, but neither party attempts to define "in the conduct of" as used in the WCPA. The parties point to case law and/or the Tennessee sales tax framework as determinative. The Court follows suit in analyzing the sufficiency of Plaintiff's allegations.

As Amazon observes, courts that have addressed the question have concluded the collection of sales tax on behalf of a state does not qualify as conduct in trade or commerce under state consumer protection laws. Those courts found "the collection of sales tax by retailers, acting as agents of state government, is an activity 'divorced from private profit' that does not occur 'in the conduct of any trade or commerce.'" *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 529 (W.D. Pa. 2021) (quoting *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 350 (W.D. Pa. 2021)), *aff'd*, No. 21-2501, 2022 WL 2763698 (3d Cir. July 15, 2022); *see also Garcia v. Am. Eagle Outfitters, Inc.*, 331 A.3d 541, 552-53 (2025); *Feeney v. Dell, Inc.*, 454 Mass. 192, 908 N.E.2d 753, 770-71 (2009); *Blass v. Rite Aid of Connecticut, Inc.*, 51 Conn.Supp. 622, 16 A.3d 855, 863 (2009), *aff'd*, 127 Conn.App. 569, 16 A.3d 737 (2011).[2]

---

[2] Plaintiff identifies cases in which courts found unfair or deceptive conduct in relation to overcharged sales tax. However, those cases did not address whether the collection of sales tax occurred in trade or commerce and are otherwise distinguishable. *See Van v. LLR, Inc.*, 500 F. Supp. 3d 927, 939-40 (D. Alaska 2020) (considering retailer's collection of sales tax in a jurisdiction that had no sales tax as involving "'simply overcharg[ing] plaintiff.") (quoted source omitted); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 427-28 (S.D.N.Y. 2019) (denying motion to dismiss where "alleged practice of over-charging customers under the guise of a 'sales tax' was consumer-oriented" under applicable New York law and

Plaintiff accurately distinguishes these cases as addressing state sales tax frameworks that differ from Tennessee. As Plaintiff observes, Tennessee law does not treat a retailer as a "mere collecting agent" for the state. *Beare Co. v. Olsen*, 711 S.W.2d 603, 605-07 (Tenn. 1986) (finding consumer lacked standing to obtain a refund of sales tax from the state where the tax was levied on a utility, which then passed the tax on to the consumer). Under Tennessee law, sales tax "is collected by the retailer and remitted to the [state] because it is a tax on the privilege to 'engage in the business of selling tangible personal property at retail in this state.'" *Niuklee, LLC v. Comm'r, Tn Dep't of Revenue*, No. M2014-1644, 2015 WL 6941593, at *5 (Tenn. Ct. App. Nov. 9, 2015) (cleaned up and quoting T.C.A. § 67-6-201(1)).[3] The seller is "liable for the tax" and "required to pass the tax on to the consumer 'insofar as it can be done[,]'" but "just because provision is made to pass the tax on to the consumer does not alter the fact that the tax itself is imposed upon the seller." *Beare Co.*, 711 S.W.2d at 604-05 (citing, *inter alia*, T.C.A. § 67-6-501 and quoting T.C.A. § 67-6-502); *see also South Central Bell Tel. Co. v. Olsen*, 669 S.W.2d 649, 651 (Tenn. 1984) ("[T]he legal incidence of the retail sales tax is upon the vendor of the taxable services or property, and not upon the vendee or consumer.").

Plaintiff argues that, in exercising its taxable privilege by operating an online marketplace through which it facilitates third party sales, calculates and collects sales tax, and

---

consumers "were being charged a sales tax when, in fact, no sales tax was owed."); *Long v. Dell, Inc.*, 93 A.3d 988, 1000-04 (R.I. 2014) (finding questions of fact as to whether retailer's collection of tax was unfair or deceptive precluded summary judgment); *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 475 N.E.2d 1024, 1028 (1985) ("Defendants admit they are engaged in a trade or commerce and it is apparent from the evidence that in the separate purchases made by the investigator over a several week period, defendants overcharged for sales tax by about 4.75% on each purchase.").

[3] *See* T.C.A. § 67-6-201(1) ("It is declared to be the legislative intent that every person is exercising a taxable privilege who: (1) Engages in the business of selling tangible personal property at retail in this state[.]"); T.C.A. § 67-6-202(a) ("For the exercise of the privilege of engaging in the business of selling tangible personal property at retail in this state, a tax is levied on the sales price of each item or article of tangible personal property when sold at retail in this state[.]").

earns revenue through its transactions, Amazon's tax-related conduct arises directly from its own commercial activity, rather than from any role as an agent of the state. Plaintiff notes Amazon is liable for the sales tax as a marketplace facilitator, *see* T.C.A. § 67-6-501(f), and asserts the amount collected from the consumer constitutes a "reimbursement of the tax[,]" T.C.A. § 67-6-503 ("The commissioner may by regulation provide that the amount collected by the retailer from the consumer in reimbursement of the tax be displayed separately from the list price, the price advertised in the premises, the marked price, or other price on the sale check or other proof of sale."). Plaintiff also notes the tax collection occurs through the same transactions from which Amazon earns revenue, and asserts Amazon's failure to cite any Washington authority requiring a separate profit motive to satisfy the WCPA. The Court, however, finds Plaintiff's WCPA claims subject to dismissal for the reasons discussed below.

Even if not deemed an "agent" of the state and even though bearing ultimate liability for the sales tax, it remains that Tennessee law requires retailers, including marketplace facilitators, to collect sales tax from consumers "insofar as it can be done." T.C.A. § 67-6-502 ("The tax imposed by this chapter shall be collected by the retailer from the consumer insofar as it can be done."); T.C.A. § 67-6-102 (85) ("'Retailer' means and includes every person engaged in the business of making sales at retail, or for distribution, use, consumption, storage to be used or consumed in this state or furnishing any of the things or services taxable under this chapter and every marketplace facilitator[.]"). There is no dispute Amazon can and does collect sales tax. To the extent Plaintiff could be understood to suggest Amazon could refrain from doing so, Plaintiff does not point to or support any such allegation. In short, while not an "agent", Amazon is a "collector" of sales tax and acts pursuant to a statutory mandate in both collecting and remitting sales tax to the Tennessee Department of Revenue. *See* T.C.A. §§ 67-6-501, 67-6-502,

67-6-504, 67-6-515. Moreover, that mandate includes the remittance of any tax collected in excess of that provided for under state law. T.C.A. § 67-6-514.

Case law supports the conclusion that the collection of sales tax pursuant to Tennessee's statutory mandate does not, standing alone, amount to an act or practice in the conduct of trade or commerce under the WCPA. Courts reaching this conclusion in relation to other state consumer protection laws recognize that the mere fact tax is collected as a part of a retail transaction does not transform the tax collection into an act or practice in the conduct of trade or commerce. *See, e.g., Garcia*, 331 A.3d at 552-53 (finding Pennsylvania merchant's collection of sales tax was "best understood as 'a statutory obligation *attendant to*,' but not within, the conduct of any trade or commerce") (quoted source omitted). The courts looked to the motivations behind the collection of taxes, which included not only a legislative mandate, but also the fact the tax collection was not undertaken for business purposes, profit, or other private gain. *See Lisowski*, 552 F. Supp. 3d at 529 (finding retailers "do not reap any profits or other tangible benefits for carrying out their legal duty to collect tax[,]" are required to remit the tax to the state, collection of the tax works against their economic interest by increasing prices, and refusal to collect the tax could result in suspension or revocation of a business license; concluding: "Common sense dictates that the collection and remittance of sales tax has little to do with profit and revenue, and is instead compelled by basic compliance with the law.") (cleaned up and quoted source omitted); *McLean*, 542 F. Supp. 3d at 350-51 ("A retailer's conduct in collecting taxes is not for purposes of profit, private gain, or greed. The retailer realizes no increase in revenue or profit in a transaction that charges a sales tax. Indeed, a retailer has little incentive to engage in 'deceptive' or 'unfair' practices by charging more than it must at the expense of its competitors charging a better price."); *Feeney*, 908 N.E.2d at 770

(finding the fact retailer remitted the taxes to the state "rather than retaining them for its own enrichment" compelled the conclusion the collection was not motivated by "'business or personal reasons' but was pursuant to legislative mandate."); *Blass*, 16 A.3d at 863 ("A retailer gains no personal benefit from the overcollection of taxes. In fact, such activity only increases the retailer's prices, working against its economic interest. When a retailer overcharges sales tax, the customer's overall purchase price increases. Customers charged more per transaction are more likely to reduce purchases made from the retailer or, more harmful still, to shop at competing stores."); *cf. Garcia*, 331 A.3d at 552-53 (finding, when collecting sales tax, a merchant is "executing its duty, imposed by the [state], for 'the perpetuation and continuing vitality of government.'") (quoted source omitted); *Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 427 Mass. 509, 694 N.E.2d 820, 836 (1998) ("A party engages in trade or commerce when it acts in a 'business context.' This court has repeatedly held that [the state CPA] does not apply to parties motivated by 'legislative mandate, not business or personal reasons.") (cleaned up and quoted sources omitted).

Washington courts similarly consider whether acts or practices are motivated by the pursuit of profit in analyzing the trade or commerce element of a WCPA claim. In *Short v. Demopolis*, 103 Wn.2d at 60-61, the Washington Supreme Court held certain "entrepreneurial" or "business" aspects of the practice of law fell within the WCPA's definition of trade or commerce, such as "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." Claims challenging attorneys' actual performance, and directed to competence and strategy employed, do not, on the other hand, fall within the definition of trade or commerce because they are not "chiefly concerned with the entrepreneurial aspects of legal practice[.]" *Id*. at 61-62 (observing claims of negligence and

malpractice are exempt from the WCPA, despite the shortcomings of other available remedies). In addressing claims challenging professional services, Washington courts find acts and practices entrepreneurial in nature if done for the purpose of increasing profits or gaining clients. *See Eriks v. Denver*, 118 Wn.2d 451, 464-65, 824 P.2d 1207 (1992) (finding attorney's acts only violated the WCPA if done "for the purpose of obtaining clients or increasing profits."); *Quimby v. Fine*, 45 Wn. App. 175, 181, 724 P.2d 403 (1986) (finding, if plaintiff proved a doctor acted for the purpose of increasing profits or gaining clients, "a lack of informed consent claim can be based on dishonest and unfair practices used to promote the entrepreneurial aspects of a doctor's practice[.]"). Further, an act or practice is not transformed into conduct in trade or commerce under the WCPA based on mere proximity to an entrepreneurial act or practice. *See Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (rejecting argument defendants' "offer to sell advertising space to attorneys transforms all of defendants' activities into trade or commerce" and finding no basis for a WCPA claim where the advertising program was "separate and distinct from the attorney profiles that [were] the subject of plaintiffs' complaint.") (citing *Fidelity Mortgage Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 470, 128 P.3d 621 (2005)).

Considered as such, it can be said the collection of sales tax *for the purpose of* increasing profits or other business-related gains could be deemed entrepreneurial in nature and actionable under the WCPA. However, challenges to the accuracy of tax collection and not chiefly concerned with the entrepreneurial aspects of a business would be exempt. *See, e.g., Timmerman v. S. Sound Outreach Servs.*, 8 Wn. App. 2d 1020, 2019 WL 1488877, at *5 (Apr. 2, 2019) (WCPA claim dismissed where allegation organization's failure to competently provide housing counseling resulted in foreclosure targeted alleged inadequacy of services, not entrepreneurial aspect of business); *Ramos v. Arnold*, 141 Wn. App. 11, 20-21, 169 P.3d 482

(2007) (WCPA claim dismissed where claim against real estate appraiser for failing to include residential defects in appraisal report targeted alleged inadequacy of appraisal rather than entrepreneurial aspect of appraiser's business). With this understanding, the Court proceeds to consider whether Plaintiff here alleges Amazon's tax collection was conduct in trade or commerce under the WCPA.

Plaintiff alleges Amazon's common course of calculating and collecting excessive sales tax in an unfair and deceptive manner occurred in trade or commerce. Dkt. 1-2, ¶¶ 38-39 (alleging a "tax to be collected" is a mandatory charge required by the government and it is unfair to collect amounts that exceed those allowed by law), 46-47 (alleging, by regularly presenting tax amounts greater than those required by law, Amazon's conduct "has the capacity to deceive reasonable consumers . . . into believing the 'tax to be collected' is a mandatory charge required by the government and must be paid"). Plaintiff does not, however, allege or set forth any facts that would support an allegation the tax collection occurred for the purpose of increasing Amazon's profits or was otherwise concerned with the entrepreneurial aspects of Amazon's business.

The Court acknowledges that, at oral argument, Plaintiff argued Amazon had a clear financial interest and motive in collecting taxes on behalf of third party marketplace sellers. However, the allegations set forth in the Complaint raise only a challenge to the accuracy of the tax collection. *See* Dkt. 1-2. The Court, as such, finds an absence of any allegation challenging conduct in trade or commerce, and dismissal under Rule 12(b)(6) warranted. *See, e.g., Feeney*, 908 N.E.2d at 771 (while plaintiffs implied and suggested a profit-seeking motive behind the tax collection in their briefing, dismissal was warranted where no such allegation was made in the complaint); *see also Call v. Routh Crabtree Olsen, P.S.*, No. C13-5241-RJB, 2013 WL 3805651,

at *6 (W.D. Wash. July 18, 2013) (granting motion to dismiss where plaintiff made no allegations regarding the "entrepreneurial aspects" of the practice of law that fell within the definition of trade or commerce under the WCPA). Having found as such, the Court finds no need to address any remaining arguments raised in relation to the WCPA, including those related to the alleged unfair and deceptive nature of the tax collection.

B. Conversion Claim

Conversion "occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619, 220 P.3d 1214 (2009); *see also Pub. Util. Dist. No. 1 of Lewis Cnty. v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 378, 705 P.2d 1195 (1985) ("A conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.") (quoted source omitted), *as modified*, 713 P.2d 1109 (1986). The elements of a conversion claim include: "(1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *Burton v. City of Spokane*, 16 Wn. App. 2d 769, 773, 482 P.3d 968 (2021). "Wrongful intent is not an element of conversion, and good faith is not a defense." *Id*. (quoting *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 818, 239 P.3d 602 (2010)).

Plaintiff here alleges ownership of and an immediate right to possess the specific, identifiable monetary amounts constituting the excess sales tax Amazon collected, that those amounts were not owed under Tennessee's sales tax laws, and that Amazon took, unlawfully retained, and deprived Plaintiff of those funds. Dkt. 1-2, ¶¶ 53-56. Plaintiff further alleges Amazon's "subsequent remittance of the excess sales tax to the Tennessee Department of

Revenue, if any, does not negate the wrongful taking because the tort of conversion is complete at the moment Amazon unlawfully exercised control over the specific funds." *Id.*, ¶ 57.

"Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it." *Consulting Overseas Mgmt. Ltd. v. Shtikel*, 105 Wn. App. 80, 83, 18 P.3d 1144 (2001). However, "[e]ven where money can be the subject of conversion, the cause of action does not lie 'unless it was wrongfully received by the party charged with conversion, or unless such party was under obligation to return the specific money to the party claiming it.'" *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 143 F.3d 502, 506 (9th Cir. 1998) (quoting *Pub. Util. Dist.*, 104 Wn. 2d at 378).

Plaintiff does not here adequately allege a conversion claim based on "wrongful receipt" of money. The facts, as alleged, show Plaintiff authorized each of the payments to Amazon, including the sales tax imposed. *See* Dkt. 1-2, ¶¶ 17-20, 22. While noting he did not authorize Amazon to collect more sales tax then he owed, Plaintiff does not identify and the Court does not find any basis for a claim of conversion based solely on the receipt of authorized payments alleged to be in excess of the amount owed. *See generally Steichen v. 1223 Spring St. Owners Ass'n*, 28 Wn. App. 2d 1039, 2023 WL 6973845, at *16-17 (Oct. 23, 2023) ("One who would otherwise be liable for conversion is not liable if the other has effectively consented to the interference with his rights.") (citing *Michel v. Melgren*, 70 Wn. App. 373, 378, 853 P.2d 940 (1993)). Here, there was no taking of funds "in the sense of conversion" where Plaintiff authorized issuance of those funds. *See Alhadeff*, 167 Wn. 2d at 619 (finding no taking of funds "in the sense of conversion" where plaintiff authorized issuance of funds, even though the authorization was based on false certifications regarding loan conditions); *cf. Reliance Ins. Co.*,

143 F.3d at 506 ("The bank did not wrongfully receive the money; it was duly credited by the government to the bank pursuant to an approved assignment."); *Pub. Util. Dist.*, 104 Wn. 2d at 377-79 (finding bank's receipt of funds was not wrongful where they were entitled to the funds following default).

Nor does Plaintiff sufficiently state a claim of conversion based on unlawful retention. A conversion claim requires that a defendant act without legal justification and "was under obligation to return the specific money to the party claiming it.'" *Pub. Util. Dist.*, 104 Wn. 2d at 378. There is no dispute that, under Tennessee law, Amazon is required to remit sales tax collected, including any amount collected in excess of that provided for by law. *See* T.C.A. §§ 67-6-501, 67-6-504, 67-6-514, 67-6-515. As such, excess tax collected and remitted pursuant to a statutory mandate does not give rise to a claim of conversion. *See, e.g., Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 308 (W.D. Pa. 2021) (finding conversion claim failed because "not only did [plaintiff] voluntarily part with his money, but once he paid the sales tax, regardless of whether the tax was imposed correctly, it became the property of [Pennsylvania]"); *James*, 2021 WL 2896837, at *4 (dismissing conversion claim where plaintiff did not allege defendants "kept the sales tax for their own use.").

Plaintiff argues that, unlike *Ranalli* and *James*, he alleges Amazon unlawfully retained the excess sales tax collected. *See* Dkt. 1-2, ¶¶ 55, 62. Plaintiff does not, however, specifically allege Amazon *failed to remit* the excess sales tax pursuant to its statutory obligation. Nor does he identify any specific facts supporting an allegation of unlawful retention. Plaintiff, at most, alleges "Amazon took and unlawfully retained [the] funds[,]" *id.*, ¶ 55, and benefited "[e]ven if [it] remitted all or part of the excessive sales tax that it collected to the Tennessee Department of Revenue," *id.*, ¶ 62; *see also id.*, ¶ 57 (alleging remittance, "if any," did not negate wrongful

taking). As argued by Amazon, these vague, unsupported, and no more than conclusory allegations of unlawful retention do not "nudge[]" Plaintiff's claim "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570; *see, e.g., James*, 2021 WL 2896837, at *3 (noting absence of allegation defendant retained sales tax and stating: "Any such allegation or argument would strain reason. Retailers briefly hold all collected sales tax in trust and promptly remit it to the [state]."); *Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 647 (S.D.N.Y. 2018) (finding allegation defendant had not remitted taxes to the state insufficient where "[b]ased exclusively on 'information and belief,'" and accompanied by no further alleged facts or documents); *Kupferstein v. TJX Companies, Inc.*, No. C15-5881, 2017 WL 590324, at *3 (E.D.N.Y. Feb. 14, 2017) ("Plaintiff's allegation that [defendant] failed to remit the full amount she paid in taxes is speculation insufficient to support her claim.").

Plaintiff also argues Amazon unlawfully retained his funds because he requested and Amazon refused to provide a refund of excess tax. *See* Dkt. 1-2, ¶¶ 21, 29. However, again, there is no allegation Amazon failed to remit excess tax to the Tennessee Department of Revenue. Plaintiff therefore does not allege Amazon unlawfully retained and refused to refund the specific, identifiable money at issue in the Complaint. *Compare Alhadeff*, 167 Wn.2d at 619 (funds at issue were not "unlawfully retain[ed]" where they were used for a project "as agreed."), *with Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 920-21, 924-25 (W.D. Wash. 2024) (plaintiff adequately alleged conversion where he "made a demand for the return of the cost of [prepaid] unpumped gas, which Defendant refused."). This is not to say that, if overcharged taxes, Plaintiff is not entitled to or has no recourse with regard to a refund. Indeed, Tennessee law explicitly provides for a cause of action against a marketplace facilitator for an overcollection of sales tax. *See* T.C.A. § 67-6-538(d) (cause of action against a seller accrues

after a purchaser provides written notice of the overcollection and requests a refund). However, in the absence of an allegation Amazon unlawfully retained the specific, identifiable excess tax amounts it collected from Plaintiff instead of complying with its statutory obligation to remit the tax, his claim does not properly lie in conversion.

C. Unjust Enrichment Claim

"Unjust enrichment is a cause of action that asks the Court to impose an implied in law contract between two parties." *Alvarado v. Microsoft Corp.*, No. C09-0189, 2010 WL 715455, at *4 (W.D. Wash. Feb. 22, 2010). "A contract implied in law, or 'quasi contract,' . . . arises from an implied duty of the parties not based on a contract, or on any consent or agreement." *Id*. (quoting *Heaton v. Imus*, 93 Wn.2d 249, 252, 608 P.2d 631 (1980)). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Id*. (quoting *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008)). To plead a claim for unjust enrichment, a plaintiff must allege "(a) a benefit conferred on the defendant by the plaintiff; (b) appreciation or knowledge of the benefit; and (c) that retention of the benefit would be unjust under the circumstances." *Id.* (citing *Bailie Commc'n, Ltd. v. Trend Bus. Sys. Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12 (1991)).

Plaintiff here alleges Amazon has been unjustly enriched by collecting excessive sales tax from Plaintiff and class members and received benefits when it did so. Dkt. 1-2, ¶¶ 60-61. Plaintiff also alleges that, even if Amazon remitted all or part of the excess tax to the Tennessee Department of Revenue, Amazon benefited (1) by "shifting all financial risk for the collection of correct taxes to Plaintiff and class members and avoiding liability for undercollection"; (2) from the possession, use, and time-value of the excess sales tax collected; and (3) by avoiding the expense and administrative burden associated with correcting its tax sourcing errors and

refunding overcollected amounts. Dkt. 1-2, ¶ 62. Plaintiff alleges the benefits Amazon received were at the expense of Plaintiff and class members, it would be unjust for Amazon to retain the benefits, and equity and good conscience require Amazon to refund the excess tax collected. *Id.*, ¶¶ 63-65.

The allegation Amazon benefited through its collection of excessive tax fails to state a claim for the same reason discussed in relation to the conversion cause of action. That is, Plaintiff does not specifically allege or set forth any facts supporting an allegation that Amazon failed to remit any excess tax collected to the Tennessee Department of Revenue. His allegation Amazon benefited by retaining excess tax is unsupported, no more than conclusory, and insufficient to state a plausible claim for relief. *Compare James*, 2021 WL 2896837, at *3 (finding plaintiff failed to adequately plead unjust enrichment where he failed to allege defendants retained sales tax instead of remitting to the state as required), *with Shields*, 741 F. Supp. 3d at 930 (finding plaintiff adequately plead unjust enrichment claim based on money defendant retained).

Plaintiff also fails to state a claim through his allegation Amazon benefited from the possession, use, and time-value of excessive sales tax before remitting those funds to Tennessee. Plaintiff elaborated upon the basis for such a claim in briefing and at oral argument, asserting, for example, that state law requiring the payment of sales tax to Tennessee on the twentieth day of the month following collection leaves Amazon between twenty and fifty-one days to earn interest or make other use of the funds. *See* Dkt. 38 at 30 (citing T.C.A. § 67-6-504). However, the Complaint itself does not contain this or any similar allegation or any accompanying facts. Plaintiff's bare allegation is not, without more, sufficient to state a claim for relief. *See Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.,* 58 F. Supp. 3d 1166, 1176 (W.D. Wash. 2014)

(finding, amongst other issues, plaintiff failed to plead any facts supporting its allegation Amazon was unjustly enriched by earning interest on funds not remitted pursuant to the terms of a contract and a statute), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.,* 691 F. App'x 406 (9th Cir. 2017).

Nor do the remaining alternative theories suffice to state a claim. "The core of unjust enrichment is the notion that a defendant has received a right or benefit that belonged to the plaintiff." *WATM LLC v. Payment All. Int'l, Inc.*, No. C24-0405-JHC, 2026 WL 63461, at *3 (W.D. Wash. Jan. 8, 2026) (quoting *BOFI Fed. Bank v. Advance Funding LLC*, C14-0484-BJR, 2015 WL 5008860, at *2 (W.D. Wash. Aug. 20, 2015) (citing *Young*, 164 Wn. 2d at 484)); *Lavington v. Hillier*, 22 Wn. App. 2d 134, 144, 510 P.3d 373 (2022) ("*[A] plaintiff must confer a benefit on the defendant* to satisfy the first element of unjust enrichment."). Here, in alleging Amazon benefited by avoiding both liability for undercollection and the expense and burden of refunding excess tax amounts, Plaintiff does not identify benefits he conferred on Amazon. *See Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 994-95 (W.D. Wash. 2022) (finding plaintiffs did not allege they conferred the alleged benefit of "reduced price competition" to Amazon or were "the ones to 'cause' consumers to pay higher prices-either directly or indirectly."). Moreover, and as demonstrated by this lawsuit and the arguments discussed herein, the alleged overcollection of taxes would not allow Amazon to avoid either liability or the expense and burden of refunding excess tax amounts.

The Court, in sum, finds Plaintiff fails to adequately allege he conferred a benefit on Amazon and therefore fails to satisfy the first element of an unjust enrichment claim. Having found as such, the Court finds no need to address any remaining arguments raised in relation to this cause of action.

D. Leave to Amend

Plaintiff requests leave to amend the Complaint in the event the Court is inclined to grant Amazon's motion. Where a complaint could be cured by the allegation of other facts, a court should grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, because it appears possible Plaintiff could cure the defects in pleading discussed above, leave to amend is properly granted.

CONCLUSION

For the reasons stated above, the Court GRANTS Amazon's Motion to Dismiss. Dkt. 37. The Court further GRANTS Plaintiff leave to amend. Plaintiff must file any amended complaint within **thirty (30) days** of entry of this Order.

Dated this 7th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge